October 26, 2018

VIA CERTIFIED MAIL

Andrew Wheeler
Acting Administrator
Environmental Protection Agency
Office of the Administrator, Mailcode 1101A
1200 Pennsylvania Avenue NW
Washington, DC 20460

Re: Notice of Intent to Sue under Clean Water Act Section 505(a)(2) for Failure to Issue Response Planning Regulations for Non-Transportation-Related Onshore Facilities for Worst-Case Spills of Hazardous Substances, as Required by Section 311(j)(5)(A)(i)

Dear Acting Administrator Wheeler:

  For over twenty-five years, EPA has failed to act on its duty to issue worst-case spill response planning regulations for non-transportation-related onshore facilities that store or handle hazardous substances ("worst-case hazardous-substance spill regulations"). Congress directed that these regulations be issued no later than two years after the enactment of the Oil Pollution Act of 1990. EPA's continued failure to issue worst-case hazardous-substance spill regulations violates Congress's mandate in the Clean Water Act and jeopardizes human health and the environment.

  The Clean Water Act provides that "any citizen may commence a civil action on his own behalf . . . against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under [the Act] which is not discretionary with the Administrator." 33 U.S.C. § 1365(a)(2). A citizen must give notice to the Administrator sixty days prior to filing the action. *Id.* § 1365(b)(2). We hereby give notice that the Environmental Justice Health Alliance (EJHA), Just Transition Alliance (JTA), Clean Water Action, and Natural Resources Defense Council (NRDC) intend to file suit against you, in your official capacity as Acting Administrator, and the EPA, over the Agency's failure to perform its non-discretionary duty to issue worst-case hazardous-substance spill regulations as required in Clean Water Act section 311(j)(5)(A)(i). A copy of this notice letter will be mailed to the Attorney General of the United States. *See* 40 C.F.R. § 135.2(b).

**I.  EPA was required to issue worst-case hazardous-substance spill regulations by August 18, 1992**

Clean Water Act section 311(j)(5)(A)(i), added as part of the Oil Pollution Act of 1990, mandates that "the President shall issue regulations which require an owner or operator of a . . . facility described in subparagraph (C) to prepare and submit to the President a plan for responding, to the maximum extent practicable, to a worst case discharge, and to a substantial threat of such a discharge, of oil or a hazardous substance." 33 U.S.C. § 1321(j)(5)(A)(i). The facilities described in subparagraph C include any "onshore facility that, because of its location, could reasonably be expected to cause substantial harm to the environment by discharging into or on the navigable waters, adjoining shorelines, or the exclusive economic zone." *Id.* § 1321(j)(5)(C)(iv). These provisions required the President to issue response planning regulations for onshore facilities that could cause substantial harm to the environment through a spill of oil or a hazardous substance.

Congress required the President to issue these planning regulations for worst-case spills by August 18, 1992. Oil Pollution Act, Pub. L. No. 101-380, § 4202(b)(4)(A), 104 Stat. 484, 532 (Aug. 18, 1990) ("Not later than 24 months after the date of the enactment of this Act, the President shall issue regulations for tank vessel and facility response plans under section 311(j)(5) of the [Clean Water Act], as amended by this Act."). In 1991, President George H.W. Bush delegated to the EPA Administrator the "functions vested in the President" respecting issuance of facility response plan regulations under section 311(j)(5) pertaining to non-transportation-related onshore facilities. Exec. Order No. 12,777, § 2(d)(1), 56 Fed. Reg. 54,757, 54,761 (Oct. 18, 1991). EPA therefore was required to issue worst-case hazardous-substance spill regulations by August 18, 1992.[1]

Congress provided specific instructions as to how facility response plans—and thus any regulations governing response plans for worst-case hazardous-substance spills—must be structured. Congress requires that all facility response plans, *inter alia*, "shall:"

(a) be consistent with the National and Area Contingency Plans, 33 U.S.C. § 1321(j)(5)(D)(i);
(b) identify the "qualified individual having full authority to implement removal actions and require immediate communication between that individual and the appropriate Federal official" and the persons providing personnel and equipment for cleanup, *id.* § 1321(j)(5)(D)(ii);

---

[1] EPA also had a duty to issue worst-case spill regulations for non-transportation-related, onshore facilities storing or handling *oil*, with which the agency has since complied. *See* 40 C.F.R. §§ 112.20–.21; *id.* pt. 112 apps. C–F.

2

(c) "identify[] and ensure . . . the availability of[] private personnel and equipment necessary to remove to the maximum extent practicable a worst case discharge, . . . and to mitigate or prevent a substantial threat of such a discharge," *id.* § 1321(j)(5)(D)(iii);
(d) "describe the training, equipment testing, periodic unannounced drills, and response actions of persons on the vessel or at the facility . . . to ensure the safety of the vessel or facility and to mitigate or prevent the discharge, or the substantial threat of a discharge," *id.* § 1321(j)(5)(D)(iv);
(e) be "updated periodically" and submitted to EPA for approval both initially and following any significant change, *id.* § 1321(j)(5)(A)(i), (D)(v)-(iv).

EPA is also required to "promptly review" response plans for onshore facilities from which a worst-case discharge "could reasonably be expected to cause significant and substantial harm to the environment," "require amendments" to the plans as necessary, and "review [the] plan[s] periodically thereafter." *Id.* § 1321(j)(5)(E) & (E)(i)-(ii), (iv).

## II. EPA has failed to comply with its non-discretionary duty to issue worst-case hazardous-substance spill regulations

EPA's obligation to issue worst-case hazardous-substance spill regulations is a non-discretionary duty enforceable under the Clean Water Act's citizen suit provision. *See* 33 U.S.C. § 1365(a)(2). Clean Water Act section 311(j)(5)(A)(i) mandates that the President—and by delegation EPA—"shall" issue hazardous-substance response-plan regulations for the facilities over which it exercises jurisdiction. 33 U.S.C. § 311(j)(5)(A)(i). In using the word "shall", "Congress could not have chosen stronger words to express its intent that" EPA issue those regulations. *See United States v. Monsanto*, 491 U.S. 600, 607 (1989); *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("It is axiomatic that the mandatory term 'shall' typically 'creates an obligation impervious to . . . discretion.'") (quoting *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998)).

Congress also set a deadline for EPA to issue the regulations: no later than two years after the August 18, 1990 enactment of the Oil Pollution Act, or August 18, 1992. Pub. L. No. 101-380, § 4202(b)(4)(A), 104 Stat. at 532. This "categorical mandate . . . deprives EPA of all discretion over the timing of its work," *Am. Lung Ass'n v. Reilly*, 962 F.2d 258, 263 (2d Cir. 1992), and establishes a non-discretionary duty enforceable through a citizen suit, *see, e.g.*, *NRDC v. Train*, 510 F.2d 692, 704 (D.C. Cir. 1974).

Despite its duty to issue worst-case hazardous-substance spill regulations by August 1992, EPA missed its deadline. These regulations are now more than twenty-five years overdue. EPA's decades-long failure to issue worst-case

hazardous-substance spill regulations therefore violates the Agency's non-discretionary duty under Clean Water Act section 311(j)(5)(A)(i).

## III.   Conclusion

The Agency's failure to comply with its statutory duty leaves the communities closest to the most dangerous chemical facilities in the country without any assurance that those facilities are—as Congress mandated—adequately planning to prevent and respond to catastrophic chemical spills, including those caused by floods, fires, and hurricanes. These communities, which are disproportionately low-income or communities of color, are entitled to all the protections for public health, drinking water supplies, and the environment Congress mandated in the Clean Water Act.

If EPA does not cure its non-compliance with Clean Water Act section 311(j)(5)(A)(i) within sixty days, EJHA, JTA, Clean Water Action, and NRDC will file suit in federal court seeking declaratory and injunctive relief, and litigation costs, as appropriate.

Do not hesitate to contact us if you would like to discuss this matter.

Respectfully,


*/s/ Kaitlin Morrison*
Kaitlin Morrison
Sara E. Imperiale
Natural Resources Defense Council
40 W. 20th St., Fl. 11
New York, NY 10011
(212) 727-2700
kmorrison@nrdc.org
simperiale@nrdc.org

Jared E. Knicley
Dimple Chaudhary
Natural Resources Defense Council
1152 15th St. NW, Ste. 300
Washington, DC 20005
(202) 513-6242
dchaudhary@nrdc.org
jknicley@nrdc.org

Counsel for:

Environmental Justice Health Alliance
28 Vernon Street, Suite 434
Brattleboro, VT 05301
(802) 251-0203

Clean Water Action
1444 I Street NW, Suite 400
Washington, DC 20005
(202) 895-0420

Just Transition Alliance
2615 Camino del Rio South, Suite 400
San Diego, CA 92108
(619) 838-6694

Natural Resources Defense Council
40 W. 20th St., Fl. 11
New York, NY 10011
(212) 727-2700

cc:	Attorney General Jeff Sessions
	U.S. Department of Justice
	950 Pennsylvania Avenue NW
	Washington, DC 20530